## WILLIAM WARWICK v. ISAAC PETTY.

1. By the decision of the Court of Errors, in *Clapp* v. *Ely*, 3 *Dutcher* 555, these propositions were settled—1. That creditors whose rights are affected by a confessed judgment, may contest its validity, and to that end may show that the judgment was entered in violation of the statute; 2. That, under the statute, a judgment by confession can be entered only for a debt actually due and owing at the time of the entry of the judgment, and a judgment confessed for a contingent indebtedness that may arise in the future, is invalid as against other creditors, and will be set aside at the instance of subsequent judgment creditors, although such contingent indebtedness matured and became an actual debt before the other judgment creditors recovered

Warwick v. Petty.

their judgments; and, 3. That where a judgment was confessed for a gross sum, made up in part of a debt then due and owing, and in part of a contingent indebtedness of a definite amount, to become due in the future, such judgment will be allowed to stand for so much as was actually due and owing when it was entered, if the affidavit on which it was entered to that extent truly stated the consideration, provided that it appears that the judgment was entered for a larger sum without any fraudulent intent.

2. A judgment laid upon the property of a debtor for more than is actually due and owing, is in clear violation of the policy of the law, and is, *prima facie*, wholly fraudulent; and the burden of rebutting and overcoming the inference of fraud lies upon the party who seeks to uphold the transaction. On the issue of fraud, proof that the money which was not actually due and owing when the judgment was entered, was subsequently advanced, is evidence, and evidence only of more or less weight, according to the circumstances of the particular case.

3. Whether a judgment by confession for an existing debt then actually due and owing, will be set aside, on the application of other judgment creditors, for the sole reason that the affidavit did not truly state the consideration, *quære*.

On rule for the application of moneys raised under executions.

Argued at June Term, 1882, before Justices DEPUE, VAN SYCKEL and REED

For Warwick, *William Clark* and *Mercer Beasley, Jr.*

For John Petty, a junior judgment creditor, *Alan H. Strong* and *A. S. Applegate.*

The opinion of the court was delivered by

DEPUE, J. This is a contest between the judgment creditors of Isaac Petty over the proceeds of the sale of his property under executions.

Warwick recovered, in this court, a judgment against Isaac Petty, by confession, in virtue of a warrant of attorney to confess judgment. The bond and warrant of attorney were dated January 24th, 1881, in the penal sum of $6056, conditioned for the payment of $3028 on demand. Judgment was

entered January 25th, 1881, for real debt, $3028, and costs, $5.50.

John Petty recovered a judgment against the said Isaac Petty on the 19th of May, 1881, by action, for $806.88 debt and $38.49 costs.

Execution on the Warwick judgment was issued January 25th, 1881, and delivered to the sheriff of Middlesex January 26th, 1881. Execution on the Petty judgment was issued May 19th, 1881, and delivered to the same sheriff May 20th, 1881.

The sheriff levied on the real and personal property of the defendant, in virtue of both of the executions above mentioned, the levy under the Warwick execution being made January 28th, 1881, and before John Petty recovered his judgment.

The property of the defendant, real and personal, was sold under both executions, the real estate having been sold January 10th, 1882. The proceeds of the sales amounted to $3165.10.

Warwick's bond and warrant of attorney were drawn by Clark, his attorney. The consideration for which they were given was—(1) $1000, money borrowed of Aaron Dawes by Warwick, on the same day the bond and warrant of attorney were signed, and by him loaned to Isaac Petty; (2) $1000 borrowed of Arthur A. Howell, August 2d, 1880, for which a note had been given, payable in eight months after date, signed by Isaac Petty and Warwick; (3) $1000, the amount of a note dated December 9th, 1880, at three months, made by Isaac Petty to the order of Warwick, payable at the First National Bank of Hightstown, and discounted by the bank for the benefit of Isaac Petty.

The testimony is that the $1000 borrowed of Howell was borrowed for, and given to, Isaac Petty. The note was not due until April 5th, 1881, but Clark swears that the note was produced when the bond and warrant were signed, and that it was then admitted that Warwick had paid Howell, on that day, the face of the note, and $28 for interest.

The $1000 note given by Isaac Petty to the bank, on which Warwick was endorser, was not produced on that day. It was not due until March 12th, 1881, and was held by the bank at the time the bond and warrant were signed. Clark testifies that the note was at that time in the bank, and that the parties desired to have the amount of it included in the judgment, and that he wrote an agreement between the parties, signed by Warwick, that Warwick should have this note charged up to his personal account in the bank, and that Isaac Petty should not be held for any part of the note, "as he had paid it that day, by said judgment and warrant of attorney." This agreement was not produced, and its contents were proved, on proof that it had been lost. Warwick was an accommodation endorser on this note. He testifies that it was charged up to him by the bank, on his bank-book. The note was not due until March 12th, 1881, and, in the absence of proof to the contrary, it must be presumed that the note was not charged up to the endorser until it matured. Indeed, it was not contended, in the depositions or on the argument, that this note was paid until after Warwick's judgment was entered.

The affidavit on which Warwick's judgment was entered, was made by Clark, his attorney. In the affidavit, it is stated that the true consideration of the bond was money loaned and advanced by said Warwick to Isaac Petty, and that the sum of $3028 was justly and honestly due to said Warwick for the principal and interest on said bond.

Upon the facts stated, it is contended that Warwick's judgment is, as against subsequent judgment creditors of the defendant, invalid wholly or in part.

Before the decision of the Court of Errors in *Clapp* v. *Ely*, 3 *Dutcher* 555, the law on the subject of judgments by confession, by warrant of attorney, was in an unsatisfactory and perplexing condition.

The facts on which that case was decided were these: Parkhurst confessed a judgment, by warrant of attorney, to Ely, Clapp and Bowen for $10,000. Other creditors of

Parkhurst subsequently recovered judgments against him. The defendant's property was sold under the several executions, producing the sum of $7951.10. The junior creditors obtained a rule to show cause why the money raised should not be applied on their judgments, to the exclusion of the first judgment. The affidavit on which the judgment to Ely, Clapp and Bowen was confessed, complied, in form, with the statute, and stated that the true consideration of the note on which the judgment was confessed, was goods sold and delivered and money lent. But it appeared, from the depositions taken, that of the $10,000, only $3052.94 was actually due when the judgment was signed, and that for the balance of $6947.06, the plaintiffs gave Parkhurst their note, with the understanding that they should subsequently furnish him with goods and cash to that amount, as he should require, and that, after judgment entered, and before the other creditors obtained their judgments, the plaintiffs did advance and pay to Parkhurst, or to his use, in cash and goods, a sum which, added to the original indebtedness, made the sum due to them $9242.42, which latter sum only, they claimed under their execution.

The Supreme Court held that the affidavit did not contain a statement of the true consideration of the debt or demand for which the judgment was confessed, and therefore was not in compliance with the statute, but discharged the rule on the ground that the affidavit was thus made without any fraudulent intent, and that the money claimed to be collected under the execution had been advanced to the defendant before the other creditors obtained their judgments. The judgment of the Supreme Court may be resolved into two heads—1. That junior judgment creditors could not take advantage of a defect in the affidavit on which a prior judgment was confessed, in that it did not conform to the statute, and state the true consideration of the bill, bond, deed, note, or other instrument of writing or demand, for which the judgment was confessed; and 2. That a judgment by confession, for a debt not actually due and owing when the judg-

ment was confessed, was good as against other creditors, there being no .proof of a fraudulent intent. *Ely* v. *Parkhurst*, 1 *Dutcher* 180.

On error, the judgment of the Supreme Court was reversed, by a vote of six for reversal and five for affirmance. By the concurrence of all the judges who voted for reversal, these propositions were settled : First, that creditors whose rights are affected by a confessed judgment may contest its validity, and to that end may show that the judgment was entered in violation of the statute ; second, that, under the statute, a judgment by confession can be entered only for a debt actually due and owing at the time of the entry of the judgment, and a judgment confessed for a contingent indebtedness that may arise in the future, is invalid as against other creditors. It may also be observed that Vice Chancellor Van Fleet, in a recent case, held that a judgment on bond and warrant of attorney could only be entered for a debt actually existing at the time of its entry, and that a contingent debt such as may arise from the liability of the plaintiff as endorser or surety for the defendant, does not constitute such a debt. The Vice Chancellor made this ruling the basis of a decree which was modified, but in all its essentials, was affirmed by the Court of Appeals. *Sayre* v. *Hughes*, 5 *Stew. Eq.* 652; *Hoag* v. *Sayre*, 6 *Id.* 552.

Another proposition was settled by the judgment given by the Court of Errors in Clapp *v.* Ely. Two opinions on the prevailing side were read—one by Chief Justice Green, concurred in by Judges Ryerson, Risley and Swain,; the other by Mr. Justice Potts, concurred in by Judge Valentine. Chief Justice Green contended that if the affidavit on which a confessed judgment was signed, be not, in any respect, in substantial compliance with the requirements of the statute, the judgment is, *ipso facto*, fraudulent, and wholly inoperative against creditors. The view of Mr. Justice Potts was that, where the judgment was confessed for more than was actually due and owing, as, for instance, when it was in part for a debt then due and owing, and in part for future advances,

and there was no actual fraud on the part of the plaintiff in obtaining his judgment for a sum greater than the defendant's then present indebtedness, the court would hold the judgment good for what was due and owing when it was confessed, and would set it aside for the excess. From the manner in which the vote was taken in the Court of Errors, the opinion of Mr. Justice Potts, on this precise point, became the judgment of the court. The order entered was that the judgment of the Supreme Court should be reversed, except as to the sum of $3052.94, and that sum was the amount of the actual indebtedness of the defendant at the time the judgment was entered, and to that extent, also, the affidavit stated, truly, the consideration of the note for which the judgment was confessed.

It may therefore be considered as decided by the Court of Errors that a judgment by confession for a gross sum, made up in part of a debt then actually due and owing, and in part of a contingent indebtedness of a definite amount, to become due in the future, will be set aside as to the latter, at the instance of subsequent judgment creditors, although such contingent indebtedness matured and became an actual, debt before the other judgment creditors recovered their judgments, and that such confessed judgment will be allowed to stand for so much as was actually due and owing when it was entered, if the affidavit, to that extent, truly stated the consideration, provided it appears that the judgment was taken for the larger sum, without any fraudulent intent.

But it cannot be affirmed that it was decided, in that case, that a judgment confessed for an existing debt then actually due and owing, will be set aside on the application of other judgment creditors, for the sole reason that the affidavit did not truly state the consideration. *Rev.*, *p.* 83, § 11. Chief Justice Green contended, with great force of reasoning, in favor of that proposition. On the other hand, Mr. Justice Ogden, expressing the opinion of the five dissenting judges, held that a judgment by confession could not be avoided by subsequent judgment creditors, because of non-compliance with the direc-

tions of the statute, and that the first judgment creditor was entitled to priority of payment to the amount of the pre-existing indebtedness, and of the advances made before the other judgments were recovered, notwithstanding the manner in which the consideration of the note was set out; and Mr. Justice Potts—without whose vote the reversal could not have been carried—in speaking of the earlier cases, said that none had gone to the extent of holding that where the debt was *bona fide*, absolute, unconditional, and existing at the time of the judgment, the judgment would be set aside at the instance of subsequent judgment creditors, for mere irregularity or defect in the form of the proceedings, without indicating what departures from the requirements of the statutes were, in his judgment, mere irregularities, or defects in mere form, as distinguished from substance. The stress of his reasoning was placed entirely on the ground that the money, for the amount of which he conceded that the judgment was bad, was not, in fact, due and owing when the judgment was entered.

Nor, as will be seen in the sequel, will it be necessary, in this case, to pass upon the question whether or not a judgment by confession, founded upon a consideration of money actually due and owing, will be set aside, on the application of other creditors, for the sole reason that, by what appears to be an inadvertence or an honest mistake, the affidavit fails to state the consideration truly. That subject will be left until some case is presented calling for a decision upon it.

With respect to the $1000 borrowed of Dawes, and the $1028 paid to Howell—for the amount of these sums, there was an actually existing debt then due and owing by the defendant to Warwick, for which judgment might lawfully be confessed, and they were, substantially, moneys lent to the defendant by Warwick, as set out in the affidavit, But, with regard to the $1000 represented by the note in bank, there was not any debt due and owing to Warwick when the judgment was entered. He was only an endorser on the note. It is true he signed an agreement to pay the note and indem-

nify the defendant, but the bank was no party to that agreement. There was no novation of the debt as between the bank and its debtor and the surety, and no debt was due for it from the defendant to Warwick until the note was paid by the latter. It may be inferred that Warwick paid the note by having it charged up to him before the junior judgment creditor recovered his judgment. But, under the decision of Clapp *v.* Ely, that will not answer; the debt must be due and owing when the judgment is entered. To that extent, at least, Warwick's judgment is invalid.

Whether the judgment shall be set aside entirely, or only in part, will depend upon whether or not it was entered for a greater sum than was actually due, with a fraudulent intent. It was insisted that the fact that Warwick paid the note to the bank before the junior judgment was recovered *per se* relieved the judgment from the imputation of fraud, and the observations of Mr. Justice Potts, as set out in the head-note to Clapp *v.* Ely, were cited in support of that contention. The remarks of the learned judge so referred to were made in view of the previous uncertain condition of the law, and the clear and complete proof that had been given of the good faith of the parties to the confessed judgment, and applied only to the facts of the case in hand.

A judgment laid upon the property of a debtor for more than is due, is in clear violation of the policy of the law. It tends to keep other creditors from pressing for their debts, and gives the debtor repose from the harassment of other creditors, by conveying the assurance that creditors' suits would be useless—nothing could be collected—and thus is obnoxious to the policy of the law which denominates as illegal all transactions the tendency of which is to hinder and delay creditors. Such a judgment is, *prima facie,* wholly fraudulent, and the burden of rebutting and overcoming the inference of fraud lies upon the party who seeks to uphold the transaction. And the burden of proof is not successfully met by mere proof that all the money was afterward advanced on the judgment which the judgment creditor was required

by the statute to advance before he took his judgment, and covered the defendants' property with it. On the issue of fraud, proof that the money which was not actually due and owing when the judgment was entered, was subsequently advanced, is evidence, and evidence only, of more or less weight, according to the circumstances of the particular case.

The affidavit was made by the attorney who prepared the bond and warrant, and was present at the arrangement between the parties for the judgment, and drew the agreement for the payment, by Warwick, of the note held by the bank. He prepared the papers and made the affidavit upon the idea that the agreement to Warwick converted the indebtedness of the defendant to the bank, into a debt due to Warwick, and he gave his testimony upon the same mistaken notion. Of the honesty of his motives, there is no doubt. Warwick paid the note, in compliance with his agreement, it is to be presumed, when it fell due, and before the other judgment creditor obtained his judgment. It might easily have been paid by Warwick before his judgment was entered, and there is no evidence that any other creditor of the defendant was deterred from prosecuting him, by the appearance of this judgment upon the record, for a sum greater than it could lawfully be entered for.

Under the circumstances, we are constrained to acquit the transaction of actual—intentional—fraud. The judgment cannot stand as against the junior judgment creditor, so far as relates to the amount of the note held by the bank, for the reason that, to that extent, the judgment was entered in violation of the statute. But for the residue, it may stand. We reach this conclusion not without some hesitation, for, if the reasoning of Chief Justice Green, in Ely v. Clapp, does not necessarily lead to the result he contended for, it demonstrates the evil effects likely to result from disregarding the requirements of a statute designed to protect the interests of creditors.

The order will be that, out of the moneys in court, there be paid—

First, to Warwick, the principal sum of $2028, the amount of his judgment which was represented by the Dawes and Howell loans, and his costs of suit, together with the interest thereon.

Second, to John Petty, the junior judgment creditor, the amount of his judgment and costs, with interest.

Third, that out of the residue, if any, the costs of both parties upon this rule be paid, either in full or *pro rata.*